1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

10

LANCE WILLIAMS,

11            Plaintiff,

12     v.

13  WASCO STATE PRISON, et al.,

14            Defendants.

CASE NO. 1:14-cv-01714-MJS (PC)

**ORDER:**

**(1) FINDING AMENDED CLAIMS AGAINST DOES 1 AND 2 TO BE COGNIZABLE**
**(2) DISMISSING ALL OTHER CLAIMS;**
**(3) OPENING DISCOVERY FOR THE LIMITED PURPOSE OF DETERMINING THE IDENTITIES OF DOES 1 AND 2**

**DISCOVERY DEADLINE: 9/12/15**
**DEADLINE TO IDENTIFY DOCUMENTS: 20 DAYS**

15
16
17
18
19
20

21     Plaintiff, Lance Williams, is a state prisoner proceeding *pro se* and in *forma*

22  *pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff has

23  consented to Magistrate Judge jurisdiction.  No other parties have appeared in this

24  action. Plaintiff's first amended complaint (ECF No. 10) is before the court for screening.

25  **I.     SCREENING REQUIREMENT**

26
27     The Court is required to screen complaints brought by prisoners seeking relief

28  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

§ 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II. PLAINTIFF'S ALLEGATIONS**

Plaintiff's claims can be summarized essentially as follows:

On or about April 5, 2014, Plaintiff then housed at Wasco State Prison, fell as he was climbing down from the top bunk in his cell.  There was no ladder to get to the top bunk, so Plaintiff usually used the table as a step.  Plaintiff could not see the table because it was dark and he was not wearing his glasses.   The table was "not [within] a reasonable distance to reach" from the bed. (Plaintiff does not specify whether the table had been moved or whether it was permanently affixed and therefore always unreasonably far from the bed.)  Plaintiff slipped while getting out of bed, landing on his back and hitting his head on the floor. He lost consciousness "for an amount of time unknown," and was awakened when Defendant John Doe 1, a correctional officer, shone his flashlight through the window of the cell door.

The officer asked Plaintiff why he was sleeping on the floor and why he was all wet. Plaintiff replied that he had fallen and that he needed a nurse.   As he came to, he felt severe pain in the back of his skull and realized he had urinated on himself.  His lower back and legs were numb and he felt sharp pain radiating from his spine. He

2

"could not move in any direction because the pain was so severe."  (It is not clear how much of this information Plaintiff conveyed to Defendant.)

Defendant Doe 1 told Plaintiff repeatedly that he could not hear Plaintiff. Plaintiff said, louder, "Man Down! Help!" but the effort of speaking caused him more pain, and he began to scream.  Then he told Doe 1 that he needed medical care and needed to go to the infirmary immediately.  Doe 1 told Plaintiff he had to wait till the morning because the nurses and doctors had gone home for the day. He then asked Plaintiff, "Are you sure you don't just want to sleep on the floor?" and told Plaintiff to "just lay there until [he] felt better and then get back in bed." Plaintiff responded, "F--- you, pig! Get me a nurse!" Defendant did not oblige, but instead told Plaintiff "not to be a p----" and walked away.

Plaintiff either fell asleep or passed out and was awakened by his cell-mate, who helped him into the lower bunk.  Plaintiff lay there for "an entire day," taking pain medications and putting cold towels on his head.  His neck and upper torso remained very stiff and hurt to move. On or about April 6, Plaintiff told another correctional officer, John Doe 2, that he had fallen off his bunk, lost consciousness, and suffered injuries. He also explained how John Doe 1 had refused to summon medical care.  John Doe 2 replied, "Too bad! Fill out a request form because I ain't calling nobody either!" When Plaintiff requested a sick call slip, John Doe 2 retorted, "Just your luck, loser, we're fresh out!" Plaintiff was unable to see a doctor until April 10, when he was called "randomly" to reception diagnostic.  By then, he was experiencing lightheadedness, blackouts, and headaches, and the stiffness in his back and neck had increased.

At the appointment on April 10, Plaintiff received a prescription for pain medication. He submitted a health request form on April 11.  On April 14, he saw Dr. Soleimani, who ordered an X-ray of his right shoulder.  This X-ray, according to

3

Soleimani's notes, was "unremarkable," but he ordered another X-ray of Plaintiff's neck on May 1.  The results of this X-ray are not in the file.

On July 8, Dr. Soleimani saw Plaintiff again, and although he noted that Plaintiff's range of motion was within normal limits, he prescribed pain medicine and recommended physical therapy.  He also signed an accommodation chrono enabling Plaintiff to sleep in a bottom bunk for five months.

Plaintiff did not, apparently, receive physical therapy before being transferred to Solano State Prison.  Once at Solano, Plaintiff received follow-up care relating to his injuries, with notes indicating he was instructed to continue his exercise routine, drink plenty of fluids, and  take ibuprofen at meals.   A physical therapy regimen, however, was not initiated, and Plaintiff alleges that Defendant Aaroon Franklin denied Plaintiff's requests to initiate physical therapy on four occasions, in addition to cancelling a grievance on the issue.

Plaintiff alleges that the substandard response he received at Wasco and Solano was the result of the respective policies of Wardens Katavich and Arnold which authorized disregard for inmate medical complaints.  Plaintiff also faults Cal. Code. Regs. tit 15, § 3350, which permits inmates' medical treatment to "be based on the judgment of the physician," for the provision of allegedly substandard care.

**III. ANALYSIS**

In its first screening order, the Court found that Plaintiff had stated a cognizable Eighth Amendment claim against John Doe 1 for his response to Plaintiff's plea for help in the immediate wake of his injuries.  Now, the Court finds that Plaintiff has also stated an Eighth Amendment claim against John Doe 2.  However, Plaintiff fails to state a claim against Defendant Franklin for denying physical therapy or against Wardens John

4

Katavich or Eric Arnold for authorizing inadequate responses to inmate medical complaints.  Because Plaintiff has not identified the John Doe defendants, the Court cannot order service; however, the Court will open discovery for the limited purpose of allowing Plaintiff to ascertain the identities of Does 1 and 2.

### A.   Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are

5

1    accepted as true, legal conclusions are not. Id. at 677-78.

2        **B.  Medical Indifference**

3        The Eighth Amendment of the United States Constitution entitles prisoners to

4    medical care, and a prison official violates the Amendment when he acts with deliberate

5

6    indifference to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97,

7    104(1976); Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014); Wilhelm v. Rotman,

8    680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

9    2006).  "A medical need is serious if failure to treat it will result in significant injury or the

10   unnecessary and wanton infliction of pain." Peralta, 744 F.3d at 1081 (citing Jett, 439

11   F.3d at 1096). Examples of a serious medical need include "the existence of an injury

12   that a reasonable doctor or patient would find important and worthy of comment or

13   treatment; the presence of a medical condition that significantly affects an individual's

14   daily activities; or the existence of chronic and substantial pain." Colwell v. Bannister,

15

16   763 F.3d 1060, 1066 (9th Cir. 2014).

17       A prison official shows deliberate indifference to such a need if he "knows of and

18   disregards an excessive risk to inmate health." Peralta, 744 F.3d at 1082 (citing Farmer

19   v. Brennan, 511 U.S. 825, 837 (1994). This "requires more than ordinary lack of due

20   care." Colwell, 763 F.3d at 1066 (citing Farmer, 511 U.S. at 835).  Instead, the prison

21

22   official must "be aware of facts from which the inference could be drawn that a

23   substantial risk of serious harm exists, and he must also draw the inference." Colwell,

24   763 F.3d at 1066.  Prison officials may demonstrate deliberate indifference when they

25   "deny, delay, or intentionally interfere with medical treatment," and prison doctors can be

26   deliberately indifferent in their provision of care. Id.

27

28
                                         6

### 1.  Serious Medical Need

Here, Plaintiff has alleged sufficient facts to establish that he had a serious medical need, at least in the immediate aftermath of his fall from the bunk bed. He suffered what appears to have been a significant impact to his head and back, lost consciousness, urinated on himself, and initially was unable to move. Plaintiff was bedridden the day following the fall.  Although the relative seriousness of the injury seems to have diminished over time, he alleges continued lower back pain. Therefore, for screening purposes, the Court finds that Plaintiff's injury was serious.

### 2.  Deliberate Indifference

#### a.  Defendant John Doe I

Plaintiff has stated a cognizable claim of deliberate indifference against Defendant Doe 1.

Delay in the delivery of medical care violates the Eighth Amendment where the delay was purposeful and caused the inmate harm. Wilhelm v. Rotman, 680 F.3d 1113, 1122-1123 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1095 (9th Cir. 2006); Estate of Prasad ex. Rel Prasad v. Cty. of Sutter, 958 F.Supp.2d 1101, 1112-1113 (E.D. Cal. 2013); Schwartz v. Lassen Cty. ex rel. Lassen Cty. Jail, 838 F.Supp.2d 1045, 1053 (E.D. Cal. 2012). Purposefulness can be inferred where a prison official is aware of the extent of the inmate's pain but declines to do anything to improve the inmate's situation. See Jett, 439 F. 3d at 1098.  An inmate's harm need not be substantial, Id., at 1096 (citing McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992)); and even brief periods of unnecessary pain can give rise to an Eighth Amendment claim. See Clement v. Gomez , 298 F.3d 898, 904-905 (9th Cir. 2002)(four-hour wait for pepper-sprayed inmates to shower could be basis of medical indifference claim); Scott v. MTA Keller, No. 2:07-cv-

00184 WL 3635728, at *4 (E.D. Cal. Sept. 14, 2010)(two-day delay in treating hand injury gave rise to medical indifference claim); see also Brown v. Plata, 131 S.Ct. 1910, 1925-1926 (2011)(citing examples of "severely deficient care" in California prisons, and noting that "many more prisoners, suffering from severe but not life-threatening conditions, experience prolonged illness and unnecessary pain").

Plaintiff's account of events indicates that John Doe 1 knowingly disregarded Plaintiff's need for medical attention after his fall.  Plaintiff told Doe 1 that he was badly hurt.  Plaintiff screamed in pain, and was unable to get up from the floor during his interchange with Doe 1.  Instead of obtaining medical help, Doe 1 told Plaintiff to get back into bed until he felt better, called Plaintiff a "[wimp]," and walked away.  Plaintiff did not get medical attention until five days later, on April 10.

The delay caused Plaintiff harm by exposing him to continuing pain and immobility and forcing him to lie on the floor in his own urine.

### b.  Defendant John Doe 2

Plaintiff's account of events likewise indicates that Doe 2 knowingly disregarded Plaintiff's need for medical attention.  Plaintiff told Doe 2 what had happened and that he needed medical care, but Doe 2 explicitly refused to help.  When Plaintiff requested medical call slips, Doe 2 told him that there were no more.  Doe 2's refusal to respond to Plaintiff's need resulted in a four-day delay in obtaining medical care, during which time Plaintiff's symptoms continued to worsen.  These facts state a cognizable claim against Doe 2.

### c.  Defendant Franklin

Plaintiff fails to state a claim of medical indifference against Defendant Franklin. A prison doctor's provision of care can constitute medical indifference where the

doctor knew that a course of treatment was ineffective but continued it anyway, delayed necessary treatment without justification, or "deliberately ignore[d] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." Jett v. Penner, 439 F.3d 1091, 1097-1098 (9th Cir. 2006); Wakefield, 177 F.3d at 1165; Estate of Prasad ex rel. Prasad v. Cty. of Sutter, 958 F.Supp.2d 1101, 1112-1113 (E.D. Cal. 2013).  Negligence, inadvertence, or differences of medical opinion, however, do not amount to a constitutional violation. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988); see also Colwell v. Bannister, 763 F.3d 1060, 1068 (9th Cir. 2014).  Rather, "the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012)(*overruled on other grounds*)(quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

Here, Plaintiff has not pleaded sufficient facts for the Court to conclude that Defendant Franklin was deliberately indifferent.  As an initial matter, Plaintiff has provided no details about Defendant Franklin's position at Solano, the circumstances under which Plaintiff saw him, or any explanation Franklin gave for denying physical therapy.  Next, although Dr. Soleimani did recommend that Plaintiff begin physical therapy, Plaintiff does not indicate that he actually started it before being transferred. Moreover, he provides no evidence that the failure to start a physical therapy regimen at Solano demonstrated deliberate disregard of Soleimani's orders "for reasons unrelated to the medical needs of the prisoner."  See Jett, 439 F.3d at 1097.  To the contrary, Plaintiff's medical records support the inference that medical staff at Solano concluded

9

that a maintenance regime of self-directed exercise was sufficient to address Plaintiff's

back and neck pain.  At the very least, Plaintiff has provided no evidence that failure to

implement physical therapy was "medically unacceptable under the circumstances." See

Snow v, 681 F.3d at 988.  Therefore, the Court will dismiss this claim without leave to

amend.

### d.  John Katavich and Eric Arnold

Plaintiff has failed to plead sufficient facts to indicate that either Katavich or Arnold

instituted policies of substandard responses to inmate medical complaints. Plaintiff

states, in conclusory fashion, that these defendants "promoted the habit and custom of

Wasco prison's employees to deny medical care when needed and to provide

inadequate medical care when adequate medical care is required" (ECF No. 10, at 4),

and cites his own treatment by Does 1 and 2 in support of this conclusion. Plaintiff also

suggests that Cal. Code Regs., tit 15, § 3350, which permits inmates' medical treatment

to "be based on the judgment of the physician" where there is no "outcome data" on

which the physician could otherwise rely, authorizes unconstitutional delivery of care.

These undeveloped hypotheses fail to state a claim: Plaintiff pleads no facts indicating

that the alleged conduct of either Doe defendant was authorized or condoned by

supervisory personnel at Wasco, let alone the wardens.  Nor has Plaintiff pointed to any

pattern of conduct by COs generally supporting the conclusion that staff misconduct was

tolerated or encouraged by highers-up at Wasco. Finally, Plaintiff has failed to explain

why the use of professional judgment in responding to inmate health complaints in any

way authorizes or contributes to the delivery of constitutionally unacceptable care.   For

these reasons, the Court will dismiss claims against Katavich and Arnold with prejudice.

10

### C.  ORDER OPENING DISCOVERY

Plaintiff's only cognizable claims are against Doe defendants.  Although the use of Doe defendants is generally disfavored, the Ninth Circuit requires that Plaintiff be provided with "an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover their identities…." Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999)(quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).

Therefore, the Court will open discovery for a period of four months.  Given that Plaintiff is limited to seeking discovery pursuant to Rule 45 of the Federal Rules of Civil Procedure at this stage of the proceedings, he is entitled to the issuance of *subpoenas duces tecum* under Rule 45.  Plaintiff shall inform the court within twenty days which documents need to be produced by the CDCR or Wasco State Prison to identify Does 1 and 2.  Plaintiff must be as precise as possible when naming documents.  Upon receipt of this information, the Court will direct the United States Marshal to serve the *subpoenas duces tecum*.

### IV. CONCLUSION

Plaintiff's complaint states a medical indifference claim against John Does 1 and 2 but fails to state an Eighth Amendment claim against the remaining defendants. Because the Court cannot order the Marshal to serve defendants whose identities are not known, the Court will open discovery for the limited purpose of ascertaining the names and addresses of Does 1 and 2.

Accordingly, it is HEREBY ORDERED that:

1.  Plaintiff may proceed on his Eighth Amendment claims against Does 1 and 2 alleged in his First Amended Complaint (ECF No. 10);

2.  All other claims asserted in the first amended complaint should be DISMISSED with prejudice;

3.  Discovery shall be open until **September 12, 2015** for the limited purpose of obtaining documents necessary to identify Doe 1 and Doe 2;

4.  Within **twenty (20) days** from the date of service of this order, Plaintiff shall specify the documents necessary to identify Does 1 and 2.


IT IS SO ORDERED.


Dated:  ___May 13, 2015___              /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE